UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KETRENNA B.,

                            Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                            Defendant.

CASE NO. C19-5988 BHS

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING
FOR FURTHER PROCEEDINGS

## I.      BASIC DATA

Type of Benefits Sought:

        (X) Disability Insurance

        (X) Supplemental Security Income

Plaintiff's:

        Sex:  Female

        Age:  46 at the time of alleged disability onset.

Principal Disabilities Alleged by Plaintiff:  Sciatica, anxiety, posttraumatic stress disorder ("PTSD"), and depression.  Admin. Record ("AR"), Dkt. # 7, at 238–39.

Disability Allegedly Began:  December 1, 2015.

Principal Previous Work Experience:  Administrative clerk, service dispatcher, waitress, home health attendant.  *See* AR at 50, 451–52.

Education Level Achieved by Plaintiff:  10th grade.

## II.     PROCEDURAL HISTORY—ADMINISTRATIVE

Before Administrative Law Judge ("ALJ") Allen Erickson:

Date of Hearing:  August 16, 2018

Date of Decision:  October 29, 2018

Appears in Record at:  AR at 37–52

Summary of Decision:

The claimant has not engaged in substantial gainful activity since December 1, 2015, the amended alleged onset date.  *See* 20 C.F.R. §§ 404.1571–76, 416.971–76.

The claimant has the following severe impairments:  PTSD, major depressive disorder, generalized anxiety disorder, lumbar spine degenerative disc disease and degenerative joint disease, and status post right shoulder surgery.  *See* 20 C.F.R. § 404.1520(c), 416.920(c).

The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.

The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with exceptions.  She can occasionally climb ladders, ropes, or scaffolds. She can occasionally crawl. She can occasionally reach overhead with the dominant right arm.  She can have occasional exposure to vibration and extreme cold temperatures.  She can understand, remember, and apply short, simple instructions.  She can perform routine tasks.  She cannot work

in a fast-paced, production type environment.  She can have occasional interaction with the general public.

The claimant is unable to perform any past relevant work.  *See* 20 C.F.R. §§ 404.1565, 416.965.

The claimant was a younger individual (age 18–49) on the amended alleged disability onset date.  She subsequently changed age category to closely approaching advanced age.  *See* 20 C.F.R. §§ 404.1563, 416.963.

The claimant has a limited education and is able to communicate in English.  *See* 20 C.F.R. §§ 404.1564, 416.964.

Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  *See* Social Security Ruling 82–41; 20 C.F.R. Part 404, Subpart P, App'x 2.

Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  *See* 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a).

The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2015, through the date of the ALJ's decision.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

Before Appeals Council:

Date of Decision:  September 24, 2019

Appears in Record at:  AR at 1–4

Summary of Decision:  Denied review.

### III.        PROCEDURAL HISTORY—THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by (X) Plaintiff   (X) Commissioner

# IV.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Although the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ.  *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

# V.    EVALUATING DISABILITY

Plaintiff bears the burden of proving she is disabled within the meaning of the Social Security Act ("Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is

unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five, the burden shifts to the Commissioner.  *Id.*

## VI.      ISSUES ON APPEAL

A.      Whether the ALJ erred in discounting Plaintiff's subjective symptom testimony.

B.      Whether the ALJ erred in discounting Plaintiff's mother's statements.

C.      Whether the ALJ erred in discounting the opinions of Kimberly Wheeler, Ph.D., Alysa Ruddell, Ph.D., and Mark Heilbrunn, MD.

D.      Whether the ALJ erred at step two in failing to find cervical spine degenerative disc disease a severe impairment.

## VII.      DISCUSSION

**A.      The ALJ Harmfully Erred in Discounting Plaintiff's Testimony**

Plaintiff argues the ALJ erred by discounting her subjective symptom testimony. Pl. Op. Br. at 14–17.  Plaintiff testified that she has pain in her right shoulder related to past frequent dislocations.  *See* AR at 178–81.  Plaintiff testified that sciatica makes it

1    difficult for her to be active or function around the house.  *See* AR at 184–85, 439, 444.

2    Plaintiff testified that her anxiety prevents her from working because she cannot be

3    around others, and it causes her hands to shake badly.  *See* AR at 191–93, 439.  Plaintiff

4    testified that she can sit for about 45 minutes to an hour at a time.  AR at 209.

5         The Ninth Circuit has "established a two-step analysis for determining the extent

6    to which a claimant's symptom testimony must be credited."  *Trevizo v. Berryhill*, 871

7    F.3d 664, 678 (9th Cir. 2017).  The ALJ must first determine whether the claimant has

8    presented objective medical evidence of an impairment that "'could reasonably be

9    expected to produce the pain or other symptoms alleged.'"  *Id.* (quoting *Garrison v.*

10   *Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)).  At this stage, the claimant need only

11   show that the impairment could have caused some degree of the symptoms; she does not

12   have to show that the impairment could reasonably be expected to cause the severity of

13   the symptoms alleged.  *Id.*  The ALJ found that Plaintiff met this step because her

14   medically determinable impairments could reasonably be expected to cause the

15   symptoms he alleged.  AR at 43.

16        If the claimant satisfies the first step, and there is no evidence of malingering, the

17   ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing

18   reasons for doing so.  This is not an easy requirement to meet.'"  *Trevizo*, 871 F.3d at 678

19   (quoting *Garrison*, 759 F.3d at 1014–15)*.*  In evaluating the ALJ's determination at this

20   step, the Court may not substitute its judgment for that of the ALJ.  *Fair v. Bowen*, 885

21   F.2d 597, 604 (9th Cir. 1989).  As long as the ALJ's decision is supported by substantial

22

1   evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's

2   testimony fail.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

3          The ALJ discounted Plaintiff's testimony regarding the severity of her physical

4   and mental symptoms because he determined it was inconsistent with the medical

5   evidence and Plaintiff's daily activities.  *See* AR at 43–48.  The ALJ's analysis with

6   respect to both sets of symptoms fell short of the Ninth Circuit's standard.

7          **1.     The ALJ Harmfully Erred in Discounting Plaintiff's Testimony
               Regarding the Severity of Her Physical Symptoms**

8

9          The ALJ first erred in rejecting Plaintiff's physical symptom testimony as

10  inconsistent with the medical evidence. An ALJ may reject a claimant's symptom

11  testimony when it is contradicted by the medical evidence.  *See Carmickle v. Comm'r,*

12  *Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d

13  1428, 1434 (9th Cir.1995)).  But the ALJ must explain how the medical evidence

14  contradicts the claimant's testimony.  *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.

15  1993).  The ALJ cannot reject the claimant's testimony simply because the objective

16  medical evidence does not "fully corroborate the alleged severity of pain." *Rollins v.*

17  *Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (citations and quotation marks omitted).

18  Furthermore, the ALJ "cannot simply pick out a few isolated instances" of medical health

19  that support his conclusion, but must consider those instances in the broader context

20  "with an understanding of the patient's overall well-being and the nature of [his]

21  symptoms."  *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016).

22

1    Here, the ALJ noted that Plaintiff showed normal range of motion, full strength,

2  and normal gait at some appointments. *See* AR at 47, 615, 647, 747. But, as the ALJ

3  acknowledged, diagnostic imaging showed Plaintiff has lumbar degenerative disc

4  disease. *See* AR at 46, 606–07. And Plaintiff had limited range of motion in her back

5  and an antalgic gait at other appointments. *See, e.g.*, AR at 649, 684. The ALJ failed to

6  adequately explain how the fact that Plaintiff sometimes had normal range of motion,

7  strength, and gait contradicted her testimony that sciatic pain made it difficult for her to

8  sit for long periods of time or be active.

9    The ALJ further reasoned that Plaintiff's "lack of medical treatment suggests the

10 alleged persistence and intensity of her pain symptoms are not as serious as alleged." AR

11 at 47. In making this finding, the ALJ ignored evidence explaining why Plaintiff did not

12 receive more treatment. "[A]n 'unexplained, or inadequately explained, failure to seek

13 treatment' may be the basis for an adverse credibility finding unless one of a 'number of

14 good reasons for not doing so' applies." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)

15 (quoting *Fair*, 885 F.2d at 603). The record indicates that Plaintiff did not get more

16 medical treatment because she kept having to move, due to domestic violence and

17 housing issues. *See* AR at 182–83, 194–95, 684. The ALJ did not adequately consider

18 this and how it might have impacted the level of treatment Plaintiff was prescribed. The

19 ALJ consequently erred in rejecting Plaintiff's physical symptom testimony as

20 inconsistent with the medical evidence.

21   The ALJ further erred in rejecting Plaintiff's physical symptom testimony as

22 inconsistent with her daily activities. An ALJ may reject a claimant's symptom

1   testimony based on her daily activities if they contradict her testimony or "meet the

2   threshold for transferable work skills." *Orn*, 495 F.3d at 639 (citing *Fair*, 885 F.2d at

3   603).  However, "the mere fact that a plaintiff has carried on certain daily activities, such

4   as grocery shopping, driving a car, or limited walking for exercise, does not in any way

5   detract from her credibility as to her overall disability.  One does not need to be 'utterly

6   incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.

7   2001) (quoting *Fair*, 885 F.2d at 603).  Most of the activities to which the ALJ referred

8   are precisely those the Ninth Circuit has warned against relying on.  The ALJ noted that

9   Plaintiff handled her own personal care, prepared her meals, performed household chores,

10  and shopped in stores once a month.  *See* AR at 47–48.  These are basic life activities that

11  cannot support rejecting Plaintiff's testimony.  *See Vertigan*, 260 F.3d at 1050.  The few

12  other activities the ALJ noted, such as traveling to Oklahoma for Plaintiff's parents'

13  wedding anniversary, do not convincingly demonstrate that Plaintiff unreliably reported

14  her level of impairment.  *Trevizo*, 871 F.3d at 678.  The ALJ thus erred in discounting

15  Plaintiff's physical symptom testimony.

16          **2.      The ALJ Harmfully Erred in Discounting Plaintiff's Testimony
                      Regarding the Severity of Her Mental Symptoms**

17

18          Much like his treatment of Plaintiff's physical symptom testimony, the ALJ erred

19  in discounting Plaintiff's mental symptom testimony as inconsistent with the medical

20  evidence.  The ALJ reasoned that Plaintiff's treatment providers found her negative for

21  depression and anxiety at some appointments, and noted that she was stable or improved

22  at others.  *See* AR at 47.  But the ALJ's analysis did not paint an accurate picture of the

1  medical evidence.  An ALJ may not reject evidence based on an inaccurate portrayal of

2  the record.  *See Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (reversing

3  ALJ's decision where his "paraphrasing of record material is not entirely accurate

4  regarding the content or tone of the record").  For example, Plaintiff's treatment

5  providers noted that her symptoms were stable, but reported at many of the same

6  appointments that her mood was anxious, her judgment was severely impaired, and she

7  suffered from persecutory delusions and obsessive thoughts.  *See* AR at 691, 699, 705,

8  708, 711, 715.

9         Moreover, an ALJ may not reject a claimant's testimony "merely because

10  symptoms wax and wane in the course of treatment."  *Garrison*, 759 F.3d at 1017.

11  Although Plaintiff's providers at times noted she was negative for depression and

12  anxiety, Plaintiff's providers noted during the same time period that she was tearful

13  during appointments, and suffered nightmares due to PTSD.  *See, e.g.*, AR at 647, 649,

14  651, 655, 745, 747, 796, 799.  The ALJ did not adequately consider Plaintiff's overall

15  condition, and thus erred in rejecting Plaintiff's mental symptom testimony.

16  **B.      The ALJ Harmfully Erred in Discounting Plaintiff's Mother's Statements**

17         Plaintiff argues the ALJ erred by discounting Plaintiff's mother's lay witness

18  statements.  Pl. Op. Br. at 13–14.  Plaintiff's mother reported that Plaintiff "has a hard

19  time standing for very long."  *See* AR at 429.  Plaintiff's mother reported that Plaintiff's

20  abilities to lift, squat, bend, stand, walk, sit, kneel, and climb stairs were affected because

21  they hurt her back.  AR at 434.

22

1    The ALJ noted that "[a]lthough [Plaintiff's mother's] statements are generally

2    credible as to their observations, they are inconsistent with the medical evidence, which

3    does not fully support [Plaintiff's] allegations."  AR at 50.

4    In determining disability, "'an ALJ must consider lay witness testimony

5    concerning a claimant's ability to work.'"  *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir.

6    2009) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)).

7    The ALJ must "give reasons germane to each witness" before he can reject such lay

8    witness evidence.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal

9    citations and quotation marks omitted).  "Further, the reasons 'germane to each witness'

10   must be specific."  *Bruce*, 557 F.3d at 1115 (quoting *Stout*, 454 F.3d at 1054).

11   The ALJ erred in discounting Plaintiff's mother's statements.  The ALJ did not

12   specifically explain how the medical evidence was inconsistent with Plaintiff's mother's

13   statements.  *See* AR at 50.  To the extent he was relying on his analysis of the medical

14   evidence in relation to Plaintiff's testimony, that analysis was erroneous, as discussed

15   above.  *See supra* Part VII.A.  The ALJ thus failed to give specific or germane reasons

16   for discounting Plaintiff's mother's statements, and erred.

17   **C.    The ALJ Harmfully Erred in Discounting the Opinions of Dr. Wheeler, Dr.
          Ruddell, and Dr. Heilbrunn**

18

19   Plaintiff argues the ALJ erred in discounting the opinions of three examining

20   doctors.  Pl. Op. Br. at 3–12.  An ALJ must give "'clear and convincing' reasons for

     rejecting the uncontradicted opinion of an examining physician."  *Lester v. Chater*, 81

21   F.3d 821, 830 (9th Cir. 1995) (quoting *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.

22

1    1990)).  If the examining doctor's opinion is contradicted, the ALJ must give "specific

2    and legitimate reasons that are supported by substantial evidence in the record" for

3    rejecting the opinion.  *Lester*, 81 F.3d at 830–31 (citing *Andrews*, 53 F.3d at 1043).  The

4    opinions of Dr. Wheeler, Dr. Ruddell, and Dr. Heilbrunn were all contradicted, so the

5    ALJ needed to give specific and legitimate reasons to reject them.

6

7

8        **1.    The ALJ Harmfully Erred in Discounting Dr. Wheeler's Opinions**

9        Dr. Wheeler examined Plaintiff in December 2015, and again in October 2016.

10   *See* AR at 662–71. At each examination, Dr. Wheeler conducted a clinical interview and

11   mental status exam.  *See id.*  In December 2015, Dr. Wheeler opined that Plaintiff had

12   marked limitations in her ability to adapt to workplace changes, communicate and

13   perform effectively at work, and complete a normal work day or week without

14   interruptions from her psychologically-based symptoms.  AR at 664.

15       Dr. Wheeler's opinions largely remained the same after her October 2016 exam.

16   She opined that Plaintiff still had marked limitations in her ability to adapt to workplace

17   changes and complete a normal work day or week without interruptions from her

18   psychologically-based symptoms.  AR at 669.  Dr. Wheeler found Plaintiff's ability to

19   communicate and perform effectively at work had changed from markedly limited to

20   moderately limited.  *Id.*  Dr. Wheeler found Plaintiff was now markedly limited in her

21   ability to "[p]erform activities within a schedule, maintain regular attendance, and be

22   punctual within customary tolerances without special supervision."  *Id.*

1    The ALJ gave Dr. Wheeler's opinions little weight.  AR at 48.  The ALJ reasoned

2    that Dr. Wheeler's opinions were inconsistent with her "essentially unremarkable mental

3    status exam," inconsistent with the medical evidence, and inconsistent with Plaintiff's

4    demonstrated level of functioning as shown by her daily activities.  AR at 48–49.  None

5    of these reasons withstands scrutiny.

6        The ALJ erred in finding that Dr. Wheeler's opinions were inconsistent with her

7    mental status exams.  First, ALJs should be cautious in second-guessing a doctor's

8    interpretation of her own mental status exam findings.  *See Moghadam v. Colvin*, No.

9    C15-2009-TSZ-JPD, 2016 WL 7664487, at *6 (W.D. Wash. Dec. 21, 2016); *Schmidt v.*

10   *Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (*cited with approval in Hoffman v. Screen*

11   *Actors Guild-Producers Pension Plan*, 571 F. App'x 588, 591 (9th Cir. 2014) ("[ALJs]

12   must be careful not to succumb to the temptation to play doctor. . . .  The medical

13   expertise of the Social Security Administration is reflected in regulations; it is not the

14   birthright of the lawyers who apply them.  Common sense can mislead; lay intuitions

15   about medical phenomena are often wrong.") (internal citations omitted).  Second,

16   although Dr. Wheeler's mental status exams showed mostly normal function, they

17   indicated that at least Plaintiff's mood and concentration were abnormal.  *See* AR at 666,

18   671.  These findings are not inconsistent with—and could arguably support—Dr.

19   Wheeler's opinions that Plaintiff was markedly limited in her ability to perform

20   effectively in a work setting or complete a normal work day without interruptions.  The

21   ALJ therefore erred in rejecting Dr. Wheeler's opinions as inconsistent with her mental

22   status exam findings.

1    The ALJ further erred in rejecting Dr. Wheeler's opinions as inconsistent with the

2  overall medical evidence and Plaintiff's daily activities.  The ALJ's analysis of both

3  issues mirrored her analysis of those issues in regard to Plaintiff's mental symptom

4  testimony.  *See* AR 47–49.  That analysis fails with respect to Dr. Wheeler's opinions for

5  the same reasons it failed with respect to Plaintiff's mental symptom testimony.  *See*

6  *supra* Part VII.A.1–2.  The ALJ therefore failed to give specific and legitimate reasons to

7  reject Dr. Wheeler's opinions, and harmfully erred.

8         **2.       The ALJ Harmfully Erred in Discounting Dr. Ruddell's Opinions**

9         Dr. Ruddell examined Plaintiff in August 2017.  *See* AR at 672–76.  Dr. Ruddell

10  conducted a clinical interview and mental status exam.  *See id.*  She opined that Plaintiff

11  was markedly limited in her ability to learn new tasks, adapt to workplace changes, and

12  complete a normal work day or week without interruptions from her psychologically-

13  based symptoms.  AR at 674.

14         The ALJ gave Dr. Ruddell's opinions little weight.  AR at 50.  The ALJ gave the

15  same reasons she gave for discounting Dr. Wheeler's opinions, that Dr. Ruddell's

16  opinions were inconsistent with her unremarkable mental status exam, the overall

17  medical evidence, and Plaintiff's demonstrated level of functioning as shown by her daily

18  activities.  *Id.*

19         The ALJ's reasoning here fails for the same reasons it failed with respect to Dr.

20  Wheeler's opinions.  First, Dr. Ruddell's mental status exam included abnormal findings,

21  such as labile/tearful affect, anxious mood, paranoia, impaired recent memory, and

22  concentration issues.  *See* AR at 675.  Dr. Ruddell, as the medical expert, was best

1    positioned to interpret those findings.  *See Schmidt*, 914 F.2d at 118.  The ALJ thus erred

2    in finding Dr. Ruddell's opinions inconsistent with her mental status exam findings.

3          Second, the ALJ unreasonably interpreted the medical evidence and Plaintiff's

4    daily activities, as explained above.  *See supra* Part VII.A.1–2.  The ALJ's analysis of

5    that evidence thus cannot support discounting Dr. Ruddell's opinions.  The ALJ therefore

6    failed to give specific and legitimate reasons to reject Dr. Ruddell's opinions, and

7    harmfully erred.

8          **3.      The ALJ Harmfully Erred in Discounting Dr. Heilbrunn's Opinions**

9          Dr. Heilbrunn examined Plaintiff in January 2017.  *See* AR at 626–31.  Dr.

10   Heilbrunn opined that Plaintiff could lift/carry up to 10 pounds frequently.  AR at 630.

11   He opined that Plaintiff could sit or walk for at least 30 minutes at a time, for a

12   cumulative length of three to four out of eight hours.  *Id.*  Dr. Heilbrunn opined that

13   Plaintiff had other limitations, such as decreased ability to reach overhead with her right

14   arm, decreased balance, and inability kneel, crawl, or stoop.  *Id.*

15         The ALJ gave Dr. Heilbrunn's opinions little weight.  AR at 49.  The ALJ

16   reasoned that Dr. Heilbrunn's opinions were inconsistent with the overall medical

17   evidence and Plaintiff's demonstrated level of functioning as shown by her daily

18   activities.  *See id.*

19         The ALJ's analysis with respect to Dr. Heilbrunn's opinions mirrored his analysis

20   with respect to Plaintiff's testimony.  *See* AR at 46–49.  That analysis failed with respect

21   to Plaintiff's physical symptom testimony, and thus fails with respect to Dr. Heilbrunn's

22

1    opinions, as well. *See supra* Part VII.A.1.  The ALJ therefore failed to give specific and

2    legitimate reasons to discount Dr. Heilbrunn's opinions, and harmfully erred.

3    **D.    The ALJ Should Reevaluate Plaintiff's Cervical Spine Condition at Step Two**

4          Plaintiff argues the ALJ erred at step two of the disability evaluation process by

5    failing to include cervical spine degenerative disc disease as a severe impairment.  Pl. Op.

6    Br. at 12–13.  Plaintiff contends Dr. Heilbrunn diagnosed her with cervical degenerative

7    disc disease, *see* AR at 630, so the ALJ needed to include it as a severe impairment.  Pl.

8    Op. Br. at 12–13.  Because the Court has found that the ALJ erred in rejecting Plaintiff's

9    physical symptom testimony and Dr. Heilbrunn's opinions, the Court need not reach this

10   issue.  The ALJ should reevaluate Plaintiff's cervical spine condition on remand.

11   **E.    Scope of Remand**

12          Plaintiff asks the Court to remand this matter for an award of benefits.  *See* Pl. Op.

13   Br. at 18.  Neither party addresses this issue with more than cursory analysis.  Remand

14   for an award of benefits "is a rare and prophylactic exception to the well-established

15   ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017).  The

16   Ninth Circuit has established a three-step framework for deciding whether a case may be

17   remanded for an award of benefits.  *Id.* at 1045.  First, the Court must determine whether

18   the ALJ has failed to provide legally sufficient reasons for rejecting evidence.  *Id.* (citing

19   *Garrison*, 759 F.3d at 1020).  Second, the Court must determine "whether the record has

20   been fully developed, whether there are outstanding issues that must be resolved before a

21   determination of disability can be made, and whether further administrative proceedings

22   would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th

1   Cir. 2014) (internal citations and quotation marks omitted).  If the first two steps are

2   satisfied, the Court must determine whether, "if the improperly discredited evidence were

3   credited as true, the ALJ would be required to find the claimant disabled on remand."

4   *Garrison*, 759 F.3d at 1020.  "Even if [the Court] reach[es] the third step and credits [the

5   improperly rejected evidence] as true, it is within the court's discretion either to make a

6   direct award of benefits or to remand for further proceedings."  *Leon*, 880 F.3d at 1045

7   (citing *Treichler*, 773 F.3d at 1101).

8          The appropriate remedy here is to remand this matter for further administrative

9   proceedings.  Conflict in the evidence remain, such as multiple medical opinions giving

10  different estimations of Plaintiff's functional abilities.  *See* AR at 246–50, 261–65, 276–

11  80, 291–95, 623–24, 630–31, 664, 669, 674, 678.  The Court cannot weight these

12  opinions, nor can it translate them into an RFC or determine whether Plaintiff can

13  perform work.  *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir.

14  2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)) ("[T]he

15  ALJ is responsible for translating and incorporating clinical findings into a succinct

16  RFC.").  Remand is therefore necessary.

17         On remand, the ALJ shall reevaluate Plaintiff's symptom testimony, Plaintiff's

18  mother's statements, and the opinions from Dr. Wheeler, Dr. Ruddell, and Dr. Heilbrunn.

19  The ALJ shall reevaluate at step two whether Plaintiff has any additional severe

20  impairments, reassess Plaintiff's RFC, and reassess the step four and five determinations.

21  The ALJ shall conduct all further proceedings necessary to reevaluate the disability

22  determination in light of this opinion.

1

# VIII.   ORDER

2   Therefore, the Commissioner's final decision is REVERSED and this case is

3   REMANDED for further administrative proceedings under sentence four of 42 U.S.C. §

4   405(g).

5   Dated this 3rd day of June, 2020.

6

7   _____

8   BENJAMIN H. SETTLE
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22